FILED ___ ENTERED
___ LODGED ___ RECEIVED

2002

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

02-CV-02257-INDT

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. by JEFFREY GORUMBA,<br><br>Plaintiff,<br><br>vs.<br><br>CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF WASHINGTON, P.C., A Washington Corporation, doing business as SEATTLE CANCER TREATMENT AND WELLNESS CENTER; and CANCER TREATMENT CENTERS OF AMERICA, a Corporation; and DR. BEN CHUE; and DR. W. WELBY COX,<br><br>Defendants. | NO. C02-2257 L<br><br>COMPLAINT AND JURY DEMAND<br><br>**Filed Under Seal**<br>pursuant to<br>31 U.S.C. §3730(b)(2) |

COMES NOW the United States of America, by and through Jeffrey Gorumba, qui tam as relator, and for a cause of action alleges as follows:

## I. JURISDICTION and VENUE

1.1 Jurisdiction exists pursuant to 31 U.S.C. §3730(b)(1) and 31 U.S.C. §3732 in that this action seeks remedies on behalf of the United States of America for violations of 31 U.S.C. §3729 by the Defendants.

COMPLAINT AND JURY DEMAND - 1

Stephen A. Teller, Attorney at Law
710 Second Avenue, Suite 700
Seattle, WA 98104
(206) 324-8969   Fax: 860-3172

1.2 The "allegations or transactions" upon which this suit is based have not been publicly disclosed in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit or investigation, or from the news media. 31 U.S.C. 3730(e)(4)(A).

1.3 The Qui Tam plaintiff is the original source in that he "has direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. §3730(e)(4)(B). He has been providing information through this litigation and previously provided information to agents of the United States Government in connection with this matter.

1.4 Seattle Cancer Treatment & Wellness Center is a Washington Corporation which resides and transacts business at Seattle, Washington, within the Western District of Washington.

1.5 Venue exists in this District pursuant to 31 U.S.C. §3730(b)(1) in that Defendants are qualified to do business in the State of Washington and transact substantial business in the District.

## II. PARTIES

2.1 The Defendant CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF WASHINGTON, P.C., is Washington Corporation, doing business as SEATTLE CANCER TREATMENT AND WELLNESS CENTER (hereinafter "SCTWC"), with its principal place of business in Seattle, and is engaged in the business of medicine, including, *inter alia*, treating cancer patients using naturopathic and "holistic" medicine, and with chemotherapy.

2.2 Many of SCTWC's patients are receiving financial support through the Medicare programs of the United States Government ("Medicare"), and SCTWC receives payments from Medicare for treating a subset of its patients.

COMPLAINT AND JURY DEMAND - 2

Stephen A. Teller, Attorney at Law
710 Second Avenue, Suite 700
Seattle, WA 98104
(206) 324-8969  Fax: 860-3172

2.3  Relator Jeffrey Gorumba resides in King County, Washington. He is a former employee of the SCTWC, who was at material times employed in the capacity of a Physician's Assistant ("PA"). He was employed by SCTWC from approximately September, 2001 until June 6, 2002.

2.4  The Defendant CANCER TREATMENT CENTERS OF AMERICA (hereinafter "CTCA") is a non-Washington corporation intimately involved with Defendant SCTWC. It advertises and refers patients to SCTWC, monitors the patient billing and other practices of SCTWC, requires licensing and other monetary payments from SCTWC, and directs the amounts and form of billing for many services needed by SCTWC, among other activities. On information and belief, CTCA oversees the billing practices of SCTWC.

### III. STATEMENT OF FACTS

**A. Medicare Regulations Limit Amounts and Types of Payments for Services**

3.1  Medicare pays certain limited fees for services provided to qualified patients. The regulations and policies of the United States Department of Health and Human Services mandate that Medicare funds may be paid to health care providers for services provided to qualified patients, but only in certain amounts for certain services.

3.2  As an example of the foregoing regulations and policies, only health care providers, including Physician's Assistants, who are licensed to practice are eligible for payments from Medicare, and then only for services they provided which are within their scope of practice.

3.3  As another example, a health care provider such as SCTWC may charge Medicare for services provided by a Physician's Assistant "incident to" the supervision of the Physician, but only when the Physician is in the building where the Physician's Assistant is providing the services at the time the services are being provided. If the Physician was not present for the

COMPLAINT AND JURY DEMAND - 3

Stephen A. Teller, Attorney at Law
710 Second Avenue, Suite 700
Seattle, WA 98104
(206) 324-8969  Fax: 860-3172

services, the Physician's Assistant's services must be billed to Medicare at a lower rate, and is reimbursed by Medicare with less money than if the Physician was present in the facility.

3.4   As another example, a full comprehensive physical exam with review of multiple physical systems (such as heart, lungs, nervous system, etc.) is reimbursed by Medicare at a higher rate, i.e., for more money, than a more limited examination.

**B. SCTWC Treats with Chemotherapy and Naturopathy**

3.5   Seattle Cancer Treatment & Wellness Center treats approximately 20 patients a day with chemotherapy. An unknown proportion of those patients are eligible for Medicare. SCTWC bills Medicare for services it provides to these eligible patients.

**C. Charging for Services Beyond the Scope of the Provider's License**

3.6   When Relator Gorumba started working for SCTWC, he was not yet approved by the State of Washington to provide Physician's Assistant services. Relator Gorumba became so qualified in October, 2001, and his license was retroactively effective as of October 1, 2001.

3.7   Prior to Relator Gorumba becoming qualified, physicians employed by SCTWC dictated notes, and SCTWC billed Medicare at Physician or Physician's Assistant "incident to" rates based on services Relator Gorumba had provided, usually without the doctor having seen the patient at all on that occasion.

3.8   Another Physician's Assistant named Bennett Reyes was seeing patients in a similar capacity as Relator Gorumba. Mr. Reyes was not qualified to see patients in the capacity of Physician's Assistant before November 1, 2001. Nevertheless, upon information and belief, prior to him becoming qualified, SCTWC billed for Mr. Reyes' services, or under other names for services he had provided, at Physician or Physician's Assistant "incident to" rates.

COMPLAINT AND JURY DEMAND - 4

**D. Overbilling for Unsupervised "incident to" Services**

3.9   Throughout Relator Gorumba's employment, Dr. Chue regularly arrived at the office in the late morning or early afternoon, but patients were seen and treated with chemotherapy beginning in the early morning.

3.10   During a period in December, 2001, P.A. Reyes and/or Relator Gorumba saw patients "incident to" the supervision of Dr. Ben Chue, however, Dr. Chue was not present at all because he was too sick to work for a period of approximately two weeks.

3.11   On occasion, Dr. Chue and/or Dr. Cox left early, left to visit patients at another facility, took vacation, was out of town at CTCA meetings, or was ill, and therefore was not present in the facility to supervise the PA's treatment of patients.

3.12   Despite these absences, SCTWC billed Medicare for many patients seen by Relator Gorumba or P.A. Reyes "incident to" the supervision of Dr. Chue or Dr. Cox at times when the supervising doctor was not present in the facility. On many of these occasions, no doctor was present in the facility.

3.13   On information and belief, such practices began long before Relator Gorumba became employed by SCTWC, and have continued since his employment ended.

3.14   Dr. Wilfred W. Cox started working at SCTWC in December, 2001, but at first did not have a Medicare billing number. Dr. Manoucher Sardo formerly worked for SCTWC, before Mr. Gorumba became employed there. On information and belief, patients seen by or incident to the supervision of Dr. Cox were billed under Dr. Sardo's name and number initially.

**E. Billing for Full Examination when Less Comprehensive Exams Were Provided**

3.15   On many occasions, physicians employed by SCTWC dictated chart notes for a full examination and SCTWC billed Medicare for a full examination performed by Relator Gorumba,

COMPLAINT AND JURY DEMAND - 5

Stephen A. Teller, Attorney at Law
710 Second Avenue, Suite 700
Seattle, WA 98104
(206) 324-8969   Fax: 860-3172

PA Bennett Reyes, Dr. Chue, Dr. Cox, and others, whether or not a full examination had been conducted on the patient.

3.16   SCTWC billing procedures involve the health care provider marking a form with the billing codes. Administrative staff then submitted bills to Medicare. Dr. Chue told Relator Gorumba that he had previously had problems with Medicare, or wanted to avoid problems with Medicare, and so he wanted to mark his own billing on the forms.

3.17   Prior to that conversation, Dr. Chue instructed Relator Gorumba to mark "99215" on the forms. Unbeknownst to Relator Gorumba, this number reflected a full or comprehensive physical examination, however Relator Gorumba had not provided a comprehensive examination to the patient, but a lesser, more limited exam. In this time frame, Relator Gorumba also observed Dr. Chue to dictate chart notes for a more comprehensive examination than had been performed. On information and belief, Dr. Chue similarly caused overbilling for work by PA Reyes and others.

3.18   Subsequent to that conversation, Relator Gorumba dictated records for patients he saw, and marked on the billing sheet the number of minutes of contact he had with the patient. Dr. Chue, without seeing the notes Gorumba had dictated, marked the billing forms. Dr. Chue had insufficient knowledge of what level of services Relator Gorumba had actually provided to the patient at the time Dr. Chue initiated the Medicare billing process for that patient visit, and could not have accurately billed. On information and belief, Dr. Chue overbilled, and similarly overbilled for work by PA Reyes and others.

3.19   When Relator Gorumba was working under the supervision of Dr. Cox, Cox instructed Gorumba to dictate portions of the chart notes, then say "normal program." This was an instruction to the transcriptionist to cut and paste a record of a comprehensive examination

COMPLAINT AND JURY DEMAND - 6

Stephen A. Teller, Attorney at Law
710 Second Avenue, Suite 700
Seattle, WA 98104
(206) 324-8969   Fax: 860-3172

into the chart, even though a comprehensive exam had not been conducted. Dr. Cox instructed Relator Gorumba to mark "99214" on the billing forms for these "normal program" examinations. This billing number reflects an examination which is only slightly less thorough than a comprehensive examination. However, Relator Gorumba had not conducted a comprehensive examination or a nearly comprehensive examination. On information and belief, Dr. Cox similarly caused overbilling for work by PA Reyes and others.

3.20 Upon information and belief, informed by the habits of SCTWC employees, SCTWC bills, and for years has billed, for a full examination, whether or not anyone actually conducted a full examination on the patient, and such conduct continues.

### F. Non-Medicare-Reimbursable Services Were Paid By Medicare

3.21 SCTWC treats many patients with naturopathic treatments. On occasion, treatments which would be rejected if authorized by naturopathic physicians have been instead ordered by the medical doctors of SCTWC, who, on information and belief, did not see or treat the patient in question.

### G. Medicare Billing, Not the Patient's Health Care, Drove Treatment Decisions

3.22 Many patients came to SCTWC and CTCA for naturopathic, holistic, acupuncture, massage, and similar treatments because they had little other hope after chemotherapy had failed to cure them. SCTWC and CTCA naturopaths referred patients to the SCTWC oncologists, including those identified herein.

3.23 Relator Gorumba was informed by said oncologist that treatment of some said patients with chemotherapy is "pointless" and "isn't doing any good." However, said oncologists prescribed chemotherapy anyway, because Medicare would pay for it, and solely for purposes of billing. Such treatment was not reasonable or necessary.

COMPLAINT AND JURY DEMAND - 7

Stephen A. Teller, Attorney at Law
710 Second Avenue, Suite 700
Seattle, WA 98104
(206) 324-8969  Fax: 860-3172

### H. These are Fraudulent Misrepresentations

3.24 Relator Gorumba discussed his concerns about the above-referenced billing practices with SCTWC Administrator Kim Carlson. Ms. Carlson encouraged such practices, indicating for example, that the "normal program" procedure meant Medicare would be billed for more money than if the chart and bills reflected that fewer systems were reviewed. She said each chemotherapy patient was worth $50,000 to $55,000 to SCTWC. She instructed him to "play the game," meaning he, too, should participate in Medicare and insurance fraud.

3.25 The purpose of falsifying the billing records is to obtain monies for Seattle Cancer Treatment & Wellness Center from the United States Government, which monies Seattle Cancer Treatment & Wellness Center would not otherwise obtain.

3.26 The defendants knowingly presented, or caused to be presented, to an officer or employee of the United States Government, false or fraudulent claims for payment or approval.

3.27 The defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

3.28 The defendants conspired to defraud the Government by getting a false or fraudulent claim allowed or paid.

3.29 The defendants' representations to the Government or its agent regarding the presence of a doctor in the same facility for "incident to" billing purposes were false representations of material fact.

3.30 The defendants' representations to the Government or its agent regarding the qualifications of health care providers who served Medicare-eligible patients were false representations of material fact.

3.31  The defendants' representations to the Government or its agent regarding the extent of Physician or Physician Assistant evaluations, number of systems evaluated, and/or "level" of the evaluations were false representations of material fact.

3.32  The defendants made these false representations of material fact knowingly as that term is defined in 31 U.S.C. § 3729(b).

3.33  The false representations were believed by the government and acted upon by the government to its damage.

3.34  These practices resulted in billing for more services than actually were provided, and resulted in SCTWC, and, through it, CTCA, receiving more money from Medicare than it was entitled to.

3.35  Based on information and belief, these fraudulent practices have been ongoing and continuing for a period of years before Relator Gorumba's employment and continued after his termination.

**I. Pattern and Practice of Fraud Perpetrated by CTCA**

3.36  Based on information and belief, these practices are encouraged, condoned, organized, or required by CTCA, and are part of a pattern and practice of fraudulent billing, upcoding, and overbilling by other CTCA-affiliated corporations.

**J. Wrongful Retaliatory Termination**

3.37  Relator Gorumba became dissatisfied with this system as he came to understand the above-referenced procedures were illegal. He told Administrator Carlson that he had concerns and did not want to have anything to do with the Medicare and other insurance fraud referenced above. She told him "This place is about making money," and he should just "play the game." Mr. Gorumba refused. In retaliation, his employment was terminated the next day.

COMPLAINT AND JURY DEMAND - 9

Stephen A. Teller, Attorney at Law
710 Second Avenue, Suite 700
Seattle, WA 98104
(206) 324-8969   Fax: 860-3172

## IV. CLAIMS OF THE UNITED STATES

4.1   The facts stated above give rise to a violation of the Federal False Claims Act, 31 U.S.C. 3729(a)(1)(2)(3).

4.2   The defendants are liable for the actions of their agents, and their employees under the doctrine of Respondeat Superior.

## V. DAMAGES SUFFERED BY THE UNITED STATES

5.1   As a proximate cause of the fraudulent practices described above the United States of America has suffered damages in amounts fraudulently billed to the United States.

## VI. CLAIMS OF RELATOR GORUMBA FOR HIMSELF

6.1   Jeffrey Gorumba's employment was terminated because he opposed illegal practices referenced herein. This conduct violates 31 U.S.C. §3730(h). As a separate claim arising out of similar facts, this conduct violates the common law of the State of Washington, specifically the tort of Wrongful Discharge in Violation of Public Policy.

## VII. DAMAGES SUFFERED BY RELATOR GORUMBA

7.1   As a proximate cause of the fraudulent practices described above Jeffrey Gorumba has suffered damages in the form of lost wages, damage to his career (future earning capacity), general damages for emotional distress, and other actual damages.

## VIII. PRAYER FOR RELIEF

**WHEREFORE** plaintiff prays for damages as follows on behalf of the United States, and/or on his own behalf as appropriate:

**On behalf of the United States:**

1. Economic damages in an amount to be proven at time of trial.

2. A civil penalty of not less than $5000 and not more than $10,000 per violation.

**COMPLAINT AND JURY DEMAND - 10**

Stephen A. Teller, Attorney at Law
710 Second Avenue, Suite 700
Seattle, WA 98104
(206) 324-8969  Fax: 860-3172

3. Treble damages as provided for in 31 U.S.C. §3729(a).

**On behalf of Jeffrey Gorumba:**

4. Lost wages and benefits of employment, both past and future, lost future earning capacity, and other economic damages in amounts to be proven at time of trial.

5. General damages for emotional distress.

6. Other actual damages in amounts to be proven at time of trial.

**On behalf of either or both the United States and Jeffrey Gorumba.**

6. Prejudgment interest.

7. Reasonable attorney fees and costs.

8. Whatever additional damages the court shall deem to be just and equitable.

DATED this 2nd day of November, 2002.

_/s/ Stephen A. Teller_

Stephen A. Teller, WSBA #23372
Attorney for Relator Gorumba

COMPLAINT AND JURY DEMAND - 11